## West v. Williams.

1. The evidence upon the issue made under a possessory warrant being conflicting, and the judge being satisfied, this court cannot say that he erred in overruling the *certiorari* to the judgment of the magistrate.

2. The magistrate having failed to fix the amount of the bond required, it was not error for the judge to fix the amount and require the bond to be given, in passing finally upon the case.

March 12, 1890.

*Certiorari.* Possessory warrant. Practice. Bonds. Before Judge ATKINSON. Glynn superior court. May term, 1889.

Williams made affidavit to obtain possession of a large bible, which he alleged had been harbored, concealed or taken possession of by West under some pretended claim, etc.; and a possessory warrant issued. Neither affidavit nor warrant stated the value of the bible. On the trial before the magistrate, the evidence for the plaintiff tended to show that he was the sexton of Bryant Baptist church in Brunswick, had charge of all the property therein and kept its keys; and that the bible was in the church on the night of May 27th, 1888. To the best of his knowledge, the bible before the court was the same bible. One of the clasps of the bible that was in the church (he thought the top clasp) was off, and one was off the bible in court; there was nothing else by which he could identify it. It is stated in the petition for *certiorari* that it was the bottom clasp which was off the bible in court. The bible was missed from the church on May 29th, 1888, and it was found that the door of the church had been taken off the hinges to effect an entrance. On May 28th, 1888, the church gave an excursion to Jacksonville. The pastor of the church testified that the bible in court was the bible of the church, and that he recognized it by the clasp, which was identical with the clasp of the one lost, and by spots on the cover. He purchased the bible for $9. It was shown that about seven similar bibles had been sold in Brunswick for one McGarvey, for whom the bible in question was also sold to the pastor of the Bryant church; and McGarvey said he never sold any bible with the clasp broken off. Spots were not un-

common, and he could not tell any of the bibles of that kind from another of the same kind. The person who sold the bible to the pastor for McGarvey said she sold three bibles of a kind similar to the bible in court, and the one she sold to the pastor was splotched; she did not think the other two were splotched. One Christopher testified for the plaintiff that he had learned that defendant had purchased a bible from a white man and went to see defendant, and after he saw the book he believed it to be the book taken from the church, and defendant told him he bought the book on Monday evening. One Williams testified that defendant told him he bought the book " in the time" of the excursion. One Ann Guyton testified, that a white man came to her house about dusk of the day of the excursion and offered to sell her a bible, and she told him she did not want to buy, and to go to the house of defendant. The constable who served the warrant testified that when he arrested defendant, he showed the warrant to him and told him he would have to take that book he had, and that defendant said all right, the book was at his house, " let's go and get it"; and they went to his house and got it.

The testimony for the defendant tended to show that, on the night of the 25th of May, 1888, he gave $1.25 to his wife with which to buy the bible in court, from a white man who brought it to his house for sale, defendant not wishing to buy but his wife wanting to purchase this bible. He supposed the bible in the condition it was in was worth about seven or eight dollars. The clasp was then lost off it, and the man said it was a sample by which he had sold many bibles and this had got badly used in handling. A receipt was taken from this man in the name of defendant's wife and this receipt was put in evidence, it being dated May 25th, 1888, and being signed " George Wilson." This pur-

chase was before the Bryant excursion ; it was Monday after defendant bought the book that the Bryant excursion left. Defendant denied that he had said that he bought the book on Monday, and testified that Christopher, a deacon of Bryant church, and one Crowder came to see him about the missing bible, and were unable to identify the bible in court as the missing one, but he told them if they would just give him $1.25 which he paid for it, as it was the church in trouble, they could take the book. Crowder was willing to do it, but Christopher refused. Defendant also denied that he said that he bought the book at the time of the excursion. Various witnesses for the defendant testified to seeing the bible in court, or one exactly like it, at his house on Sunday before the excursion, and defendant's wife corroborated his testimony.

The magistrate found in favor of the plaintiff. The defendant carried the case by *certiorari* to the superior court, alleging that this finding was against the evidence and the law, and further alleged that the judgment of the magistrate was void and erroneous in that the judgment did not fix the amount of the bond that was to be given by the plaintiff, and the affidavit and warrant did not allege any' value of the bible. The bond required by the magistrate of the plaintiff was " a sum equal to double the value of the property as required by law," but it did not state what the value of the property was. The *certiorari* was overruled, and the judgment entered by the magistrate, awarding the possession of the property to the plaintiff in the possessory warrant, was affirmed, provided the plaintiff gave bond in the sum of $20 payable to defendant, conditioned for the forthcoming and production of the property, etc. West excepted.

FRANK H. HARRIS, for plaintiff in error.

SYMMES & BENNETT, by J. H. LUMPKIN, *contra.*

Simmons, Justice.

1. The evidence was conflicting in this case. The magistrate who tried the issue under the possessory warrant found in favor of the defendant in error. A writ of *certiorari* from his decision was sued out, and granted by the judge. Upon the hearing thereof, the judgment of the magistrate was affirmed. The evidence being conflicting, and the judge being satisfied with the judgment of the magistrate, we cannot say that he erred in overruling the *certiorari*.

2. The magistrate having failed to fix the amount of the bond required under the statute, there was no error in the trial judge fixing the amount and requiring the bond to be given according to law. In the case of *Hillyer* v. *Brogden*, 67 *Ga.* 24, where no bond was required of the plaintiff, this court remanded the case with directions that the superior court modify its judgment and require a bond. We think, therefore, it was proper for the judge of the superior court, in passing finally upon the case, to require the bond to be given.

*Judgment affirmed.*